UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                              DECISION AND ORDER

           -v-

                              07-CR-6047(CJS)

RON BRYANT,

                     Defendant.

_____

**APPEARANCES**

For the Government:          Aaron J. Mango, A.U.S.A.
                                        U.S. Attorney's Office
                                        138 Delaware Avenue
                                        Buffalo, NY 14202

For the Defendant:           Anne M. Burger, A.F.P.D.
                                        Federal Public Defender's Office
                                        28 E. Main Street, Suite 400
                                        Rochester, NY 14614

**INTRODUCTION**

On March 10, 2008, a jury found the defendant guilty of possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c), and of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.

-1-

§ 924(c)(1). The matter is now before the Court on the defendant's motion for a new trial on the ground that the Government failed to disclose the grand jury testimony of Special Agent Christopher Robinson ("Robinson") of the Bureau of Alcohol, Tobacco, Firearms and Explosives. For the reasons stated below, the defendant's application is denied.

## BACKGROUND

On April 19, 2007, a federal grand jury returned a two-count indictment against the defendant. Count One accused him of possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c), and Count Two accused him of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The presentation to the grand jury took place on April 19, 2007, the same date that the indictment was returned. Robinson was the sole witness called by the Government to testify before the grand jury. Relevant to the defendant's motion for a new trial is Robinson's grand jury testimony regarding the shotgun and drugs that the defendant was accused, and ultimately convicted, of possessing. More specifically, Robinson testified in the grand jury that the serial number on the shotgun was "X24684M" when in fact, as determined at the time of trial, the actual serial number was "X240681M." As to the drugs, Robinson testified that he believed the seven bags of cocaine base ("crack cocaine") that were recovered were "dime bags."

On September 26, 2007, the Court heard oral argument with respect to the defendant's pre-trial omnibus motion. In that regard, the defendant requested *Jencks* material in advance of the time required by statute. Upon consent of the Government, the Court ordered that *Jencks* material be turned over two weeks before trial. Subsequently,

by order of the Court filed on January 28, 2008, the trial of this matter was scheduled to commence on March 3, 2008.

As required by the Court's January 28, 2008 order, the Government filed a witness list on February 25, 2008. Two days later, on February 27, 2008, the Government filed an amended witness list. On both filings, the Government indicated that it anticipated calling:

> **SPECIAL AGENT CHRISTOPHER ROBINSON** - Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), will testify concerning his involvement in this investigation, and if necessary, he will testify concerning the statements made by the defendant during the proffer interview with the defendant.

At trial, on its direct case, the government called Investigator John Brennan ("Brennan") of the Rochester Police Department as an expert in the area of narcotics trafficking. Brennan testified as to how crack cocaine is generally produced and how it is generally sold in the city of Rochester. Brennan further offered his opinion that the seven baggies containing crack cocaine, seized from the defendant's residence, were consistent with possession with intent to distribute, rather than for personal use. In this regard, he testified that each of the bags was a "twenty bag." Brennan explained that a "twenty bag" generally weighs about .40 grams, while what is referred to as a "dime bag" generally weighs about .20 grams. However, introduced into evidence at trial was a stipulation, reached between the defendant and the Government, as to what Linda Teague ("Teague"), a Forensic Chemist employed by the Monroe County Public Safety Laboratory, would testify if called to the stand. The stipulation indicated, *inter alia*, that Teague would testify that each of the seven bags in question contained crack cocaine and weighed respectively as follows: 0.118 grams; 0.118 grams; 0.126 grams; 0.133 grams; 0.133 grams; 0.141

grams; and 0.179 grams. The Government also attempted to use Brennan's testimony to discredit the testimony of Sharon Baulkman, a witness for the defense, who testified that the seven bags were "nickel bags." The Government did not call Robinson on its direct case, but did call him as a rebuttal witness. His rebuttal testimony was limited to statements the defendant, in the presence of his attorney, made to Robinson on October 5, 2008 during a proffer interview.

On April 11, 2008, approximately one month after the jury returned its verdict, the Government filed what it captioned a "Motion for an In Camera Ruling Pursuant to Title 18 United States Code Section 3500(c)." (Document # 46.) In its application, the Government explained that it had inadvertently failed to disclose the grand jury testimony of Robinson and requested the Court to review such testimony *in camera* and determine that it was not *Jencks* material. However, at a court appearance on April 23, 2008, the Court rejected the Government's application pursuant to § 3500(c), since it determined that such section of law applied to a request made before a witness testified, not after. Accordingly, the Court ordered that Robinson's grand jury testimony be turned over to the defendant.

On May 7, 2008, the defendant filed a motion for a new trial "based upon the government's suppression of favorable evidence in violating his due process rights under *Brady*, his Sixth Amendment confrontation and compulsory process rights and in violation of the *Jenks* Act." (Affirmation in Support of Defendant's Notice of Motion, ¶ 30, Document # 52.) On May 29, 2008, the defendant filed papers supplementing his request for a new trial (Document # 56).

## DISCUSSION

**A.   *Brady* Claim**

The defendant argues that the Government's failure to disclose Robinson's grand jury testimony violated his Fifth Amendment rights to due process under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Court, however, disagrees.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* Although *Brady* itself concerned the Government's failure to disclose information that had been specifically requested by the defense, the Supreme Court subsequently held that the Government also has a general duty to disclose information whose exculpatory value is obvious, even when there has been no request. *United States v. Agurs*, 427 U.S. 97, 107 (1976). However, the prosecution's disclosure obligation under *Brady* extends only to information that is "material." *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001). In other words, the suppression of information that is not material does not violate *Brady*, even though the information may be favorable to the defense. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). On what constitutes material information, the Second Circuit has explained:

> Undisclosed "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.); see id. at 685, 105 S.Ct. at 3385 (opinion of White, J.). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome" of the case, id. at 682, 105 S.Ct. at 3383 (opinion of Blackmun, J.); hence, the undisclosed evidence will be deemed material only

> if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. at ----, 115 S.Ct. at 1566. This standard does not mean that a defendant is required to show that the undisclosed evidence would have rendered the evidence as a whole insufficient to support a conviction, see id. (test of Brady materiality "is not a sufficiency of evidence test"), or that if timely disclosure had been made, acquittal would have been certain. But the defendant is required to show more than just that the error was not harmless beyond a reasonable doubt. *See Kyles v. Whitley*, 514 U.S. at ---- - ----, 115 S.Ct. at 1566-67; see also *United States v. Agurs*, 427 U.S. at 112, 96 S.Ct. at 2401 ("the constitutional standard of materiality must impose a higher burden on the defendant" than "the customary harmless-error standard").

*U.S. v. Payne*, 63 F.3d 1200, 1209-10 (2d Cir.1995). As to impeachment material, the Circuit has observed, "[i]t is well settled that where ample ammunition exists to attack a witness's credibility, evidence that would provide an additional basis for doing so is ordinarily deemed cumulative and hence immaterial. *United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998).

In this case, the Court concludes that there was no *Brady* violation, since Robinson's grand jury testimony, although arguably favorable to the defendant, was not as a matter of law, material. As the defendant conceded during oral argument, its value was impeachment in nature. More specifically, the defendant first contends Robinson's grand jury testimony could have been used to cast doubt on Brennan's credibility, since, at trial, Brennan testified that the seven bags of crack cocaine at issue were "twenty bags," while at grand jury, Robinson testified that he believed they were "dime bags." In this regard, the defendant also suggests that discrediting Brennan would have bolstered the credibility of defense witness Sharon Baulkman, who described the bags as "nickel bags." However, apart from Robinson's grand jury testimony, the defendant had a basis for calling into question Brennan's opinion that the bags of crack cocaine were "twenty" bags. The

stipulation of Teague's testimony, which details the weight of each of the seven bags, is clearly at odds with Brennan's testimony that a "twenty bag" generally weighs about .40 grams, while a "dime bag" generally weighs about .20 grams. Significantly, the stipulation was received into evidence prior to the cross-examination of Brennan, yet he was never confronted with the discrepancy, nor was the discrepancy ever raised by the defendant during closing arguments.

Moreover, even if the defendant had somehow been able to use Robinson's grand jury testimony to impeach Brennan, the Court finds that the evidence against the defendant was so overwhelming that there is no reasonable probability that a different verdict would have been rendered. In the defendant's bedroom, police recovered seven individual bags of crack cocaine, a fully loaded shotgun, twenty shotgun shells, several small unused bags, "cut," (powders used to dilute the product), two digital scales, and $1,783 in cash. Additionally, the Government presented a sworn statement signed by the defendant on the day he was arrested in which he admitted to selling narcotics from his home. Moveover, statements the defendant made during the proffer session were received into evidence during Robinson's rebuttal testimony. Specifically, Robinson testified that in the proffer session, the defendant, with his lawyer present, admitted that he sold crack cocaine from his residence and admitted that the shotgun discovered in the his residence was for protection.

As to the defendant's further contention that Robinson's mistaken grand jury testimony about the serial number of the shotgun was *Brady* material, the Court finds that this argument has no merit. On March 6, 2008, while the trial was ongoing, the Government brought the error to the defendant's attention by filing a Motion to Amend the

Indictment (Document # 38). The motion indicated that the indictment contained a typographical error as to the serial number of the shotgun.

**B.     Confrontation Clause Claim**

The defendant argues that the failure to disclose Robinson's grand jury testimony violated the defendant's Sixth Amendment right to confrontation of witnesses. The Court disagrees.

The Sixth Amendment states: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Confrontation Clause of the Sixth Amendment is violated when a defendant is "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witnesses.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (*quoting Davis v. Alaska*, 415 U.S. 308, 318 (1974)). In addition to the right to confront witnesses, a defendant has a right to cross-examine any witness who testifies against him. *See Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (*citing Dutton v. Evans*, 400 U.S. 74, 89 (1970)). Cross-examination, however, is not improperly restricted if the jury possesses the facts sufficient to make a "discriminating appraisal" of the particular witness's credibility. *U.S. v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990).

In the present case, as discussed above, the defendant possessed sufficient facts to raise the issue of Brennan's credibility as an expert witness apart from Robinson's grand jury testimony. Despite his claims to the contrary, the defendant was not prohibited from

exposing facts that would allow jurors to appropriately draw inferences relating to the reliability of Brennan as a witness. *See Davis v. Alaska*, 415 U.S. at 318. Any ammunition to impeach Brennan provided by Robinson's grand jury testimony was readily available to the defendant by way of the stipulation involving Teague.

**C.     Compulsory Process Claim**

The defendant also claims that the Government's suppression of Robinson's grand jury testimony violated his Sixth Amendment right to compulsory process. The Court rejects the defendant's argument. According to the Supreme Court:

> [t]he only recent decision of this Court dealing with the right to compulsory process guaranteed by the Sixth Amendment suggests that more than the mere absence of testimony is necessary to establish a violation of the right . . . In [*Washington v. Texas*, 388 U.S. 14, 87 S.Ct. (1967)], this Court found a violation of this Clause of the Sixth Amendment when the defendant was arbitrarily deprived of "testimony [that] would have been relevant and material, and . . . vital to the defense" . . . He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense.

*U.S. v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (internal citations omitted). The Court has already concluded that Robinson's grand jury testimony was not material to the defendant's case.

**D.     *Jencks* Claim**

The defendant argues that the failure to disclose Robinson's grand jury testimony violated the *Jencks* Act, 18 U.S.C. § 3500. The Court again disagrees with the defendant's position.

The *Jencks* Act states in pertinent part:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United

States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which **relates to the subject matter as to which the witness has testified.**

Jencks Act, 18 U.S.C. § 3500 (emphasis added).

There is no dispute that the Government agreed to turn over all Jencks material two weeks before trial, and there is no dispute that the Government's original and amended witness list stated that Robinson would testify to "his involvement in this investigation," a subject to which he testified in the grand jury. Further, there can be no dispute that had Robinson testified in accordance with the Government's notice, it would have amounted to a Jencks violation, and the Court would then be obligated to decide to what, if any, relief the defendant was entitled. However, the critical inquiry under the Jencks Act is not to what a witness could have or might have testified at trial, but rather to what the witness actually testified.

Consequently then, the first thing that the Court must determine is whether the Jencks Act was, in fact, violated. Obviously to do so, the Court must compare Robinson's grand jury testimony with his trial testimony to resolve whether the latter relates to the subject matter of the former.[1] In that regard, at grand jury Robinson testified to matters relating to the execution of a search warrant, the arrest of the defendant, and the post arrest interview of the defendant, all of which occurred on March 22, 2007. At trial on rebuttal, though, Robinson testified only to statements the defendant made, in the presence of his counsel, at the proffer session, which occurred on October 5, 2008. In

---

[1] Robinson's grand jury testimony and his trial testimony can be found attached as Exhibit A and Exhibit D respectively to the Government's Memorandum in Response to Defendant's Motion for a New Trial (Docket # 61).

comparing Robinson's grand jury testimony to his trial testimony, the Court concludes, as a matter of law, that the Government had no obligation to turn over Robinson's grand jury testimony, since it did not pertain to his trial testimony. Therefore, there was no *Jencks* violation.[2]

**CONCLUSION**

Accordingly, the defendant's motion for a new trial (document # 52) is denied in its entirety.

IT IS SO ORDERED.

DATED:	August 1, 2008
	Rochester, New York

ENTER.

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[2] In light of the Court's determination that Robinson's grand jury testimony was not *Jencks* material, it is of no consequence whether the Government deliberately or inadvertently failed to disclose it. Consequently, to the extent that the Court orally, on July 11, 2008, ordered the Government to provide the defendant copies of e-mails between the Government and Robinson on the issue of whether the failure to disclose was deliberate or inadvertent, that order is vacated. Further, the defendant's application that the Government be required to provide the defendant copies of any e-mail communications between the Government and Robinson from February 1, 2008, through March 3, 2008, is denied as moot.